Thank you, Your Honor. My name is Gavin Martinson and I represent the appellant Dassault Falcon Jet. This appeal centers on a straightforward question. Does the record contain a triable question as to whether Falcon Jet paid the appellees on a salary basis, which is a prerequisite for determining the applicability of various other relevant exemptions to the overtime requirements in the Federal Labor Standards Act and the Arkansas Minimum Wage Act. We contend that the record is replete with evidence that Falcon Jet has in fact shown at least a triable question as to whether it paid appellees on a salary basis. Now, you move for summary judgment? Yes, Your Honor. Okay. And the district court did You thought the facts were pretty plain? Indeed, Your Honor. Yes. The district court obviously disagreed with us on that and only addressed the narrow question of the salary basis test. In other words, did not get into the duties test to determine whether the full exemptions would apply here. So the only question on appeal has to do with the salary basis test. So what strikes me as an important preamble is are you arguing that Hughes in the Sixth Circuit was wrongly decided or just that it's distinguishable? I believe that it's just distinguishable based on the way that So you're not challenging it as persuasive authority? And the reason I ask this is because your reply brief, which struck me as almost interminable, never addressed the key question in Hughes, which is whether there is evidence refuting that the salary was guaranteed. That is, that there were weeks in which a plaintiff worked less than the 40 hours or 80 hours for a two-week and did not have enough unused vacation and other time and therefore got paid less than the 20, 80, whatever the number was for the full salary basis. Opposing counsel's brief makes it clear that there was such evidence and that that ends the inquiry. And you never respond to that. Well, I don't believe it ends the inquiry here for a couple of reasons. Well, but it does under Hughes. Then to that extent, I believe that Hughes is wrong. Well, is it? I mean, Hughes carefully distinguished the cases you relied on, Lids, in the First and Second Circuit case, by saying in those cases there was clear evidence that the salary was guaranteed. That is, that there weren't weeks when there weren't other offsetting benefits that could be surrendered so as to, quote, earn the salary. Yes, Your Honor. And I believe that that's what I was getting at when I said that it's predetermined as the regulation requires, which is what... No, no, no. Well, I mean, the district court didn't think much of that. Fair enough. All right. And I mean, it's, sure, you can put it on a piece of paper, but that doesn't, that doesn't, that's not the proof of the pudding. So is your argument that because there were 51 out of 2,000 weeks, there were only 51 that we went on a nose-counting basis? That's not... Are you actually saying there were no weeks in which the guaranteed salary, the predetermined salary wasn't paid? I'm aware of two weeks that the appellees have shown in their briefing in the record where, as they put it, there's no salary-compliant explanation here. And because we're, the procedural posture is summary judgment... But the fact that struck me in their brief was, what if you've used up all your vacation time and your leave time, and it's not a holiday and so forth? And so you simply don't have anything to give up. What does the record show about what the pay was in those situations? Yes, Your Honor, the record shows that the pay in those situations is compliant with the salary basis test, subject only to the exceptions that are expressly laid out. And that's, I'm sorry, that's the gibberish, that's what your brief is full of. It doesn't say, what was the money in hand? The money in hand was above the minimum salary basis required to be paid to them on a biweekly basis, even when they didn't work 80 hours, and even in the very rare circumstances where they didn't have enough PTO or vacation time to make up the difference. Now give me the record sites where I can confirm that. Yes, Your Honor. So the easiest place to confirm that is just by looking in the payroll records themselves, which are found... I'm not going to go through... Yes, Your Honor. You're going to tell me line by line. I will. I'm not going through all of them. I will, Your Honor. For example, the payroll records applicable to Apelli-Durenin, which are found at appendix page 188 and 189. And you'll see that these are all examples of instances where the Apelli did not work 80 hours in the biweekly pay period, did not have sufficient PTO to make up the difference, and was still paid in accordance with the salary basis test. And it's important to recognize that the salary basis test incorporates the exceptions that are in section 602 of the reg, 602B. Okay, give me another. How many examples are we going to have here? I count here 1, 2, 3, 4, 5, 6, 7, 8. And are they identified specifically in the brief or in the briefs to the district court? Not specifically, Your Honor. So this is where to be the pigs, the blind pigs looking for truffles? No, no. How many weeks out of the total number of weeks at issue do you put in your eight? Oh, well, there's a couple of exceptions category. But two, Your Honor. You just said there were eight examples. Okay, I misunderstood your question. What I'm saying is there are 56 instances where deductions were taken, and those deductions comply with the exceptions in section 602B. But I want to know if they reflect guaranteed payment. Yes, Your Honor, they do reflect guaranteed. You've got all these different reasons why a particular deduction, if you go to the fine print on the regs, are okay. That's not my point. My point is if it's got to be guaranteed, if there can't be any reductions based on quality or quantity of work performed, how many examples of those, how many exceptions to that are there? How many times in the record did the district court see that somebody didn't work 80 hours, didn't have anything to give up, and therefore got paid less than the predetermined amount? Yes, Your Honor, a couple of points. To answer your direct question, I believe the district court found three of those instances, and we addressed all of those in the brief. And to go beyond that, your point about the guaranteed minimum salary is well taken, but to determine the guaranteed minimum salary, the proper analysis is not just do you receive, in this instance, 80 hours every single pay period, regardless of what you work. It has to be also subject to the exceptions that are in 602B. What's that, Your Honor? Like what? Like, for example, personal leave is the first exception. But that's, I was counting as give-ups. Yes, I am too, Your Honor. But I'm trying to explain why it is that all of these give-ups, so to speak, are still in line with the salary basis test. Even if they are, you still have Mr. Cart, your 30B6 witness, clearly testifying that if they have no give-ups and they work less than the 80 hours, they're not going to get paid for the 80-hour period. So how can it be a guaranteed minimum? Well, I believe that we've addressed what Mr. Cart testified to. I respectfully disagree with that characterization of his testimony. What he was testifying to is the regular rate of pay. And it's true, Your Honor, that if an employee does not work 80 hours and does not have the PTO to make up the difference, those are the only instances where there could be deductions taken. But don't you lose? Isn't that the end of the story? No, Your Honor. If Hughes is right, and I don't think Hughes is very persuasively reasoned, frankly, but if it's controlling authority, you lose. I don't think we lose as long as the deductions are in line with the exceptions that are allowed for determining whether the salary is still guaranteed. That wasn't the Sixth Circuit's analysis of the thing. Understood. And that's why I originally said that I would distinguish the Sixth Circuit, because here we do have evidence, when read in the light most favorable to Falcon Jet, as the Court must, that even in those instances where we fall short, those rare instances, it's still in compliance with the exceptions that are permitted in 502B. What exceptions are there that would be applicable in the situation, as I read it, described by Mr. Cart? Yes, so the exceptions would be, number one, per FMLA leave. And so, if an employee takes FMLA leave, the exception says you do not have to pay them for those days that they take the FMLA leave, and you're still salary compliant. Another example that comes up, which are the ones that I just cited for Judge Loken, are examples of personal leave. That's the first exception that's listed. And in those situations, when an employee takes a full day of leave, you are not required to pay them for that full day. And you are still in compliance with providing a guaranteed minimum salary. I'll reserve my time for rebuttal, unless there are other questions. Well, I still don't, I don't understand how you, where's the guarantee? The guarantee? Here, we're going to put in your payroll records that you're paid on a salary basis, and here is the predetermined amount. And oh, by the way, if you don't have, if you don't work 80 hours in an 80 hour pay period, and if you don't have some, and if you don't have an other, a benefit that you can give up that the regulations permit to be not counted, you're not going to get paid the predetermined amount. Isn't that what CART testifies? No, Your Honor, and the exceptions don't go to the benefits that are allowed. The benefits are extras that the company has provided. The exceptions that are in the regs, that I was. FMLA leave is mandatory, yeah. Yes, Your Honor. But you give it up. You only get 12 weeks a year. Yes, Your Honor. Okay, so he says, well, I know I didn't work four days, four days this 10 day period, but I'll give up four days of my FMLA leave this year. Yes, and what I'm saying is the regulation says in that situation, they are still paid. But now we got the employee who doesn't have, he's used his FMLA leave. He's used his personal leave. It's not a holiday. He's used his vacation time. He has nothing to give up. He doesn't get paid, right? No, he does get paid, and that's what I'm saying. Where's the example of someone who got paid? Those are the examples that I listed for you. I know that you said they all fall within the exceptions. They're all people with give ups, that's what I'm calling. Yes, so I think it would be helpful to distinguish between two instances. I want a guy who didn't work 80 hours, didn't fall, didn't have anything to give up that falls within what you're calling the allowed exceptions, and still got the predetermined pay. Yes, and those are the examples. Is there evidence of that in the record? Give me a specific guy. Yes, those are the examples that I gave you, but there's a distinction. You're giving me examples of guys who didn't get paid. That's why I have to. The distinction here is there are benefits that the company allows, but if those benefits. Don't talk about benefits. Talk about what workers care about, the check in hand. Yes, if those benefits never existed, the reg still allows for deductions, for example, full days where they don't work. I'm not making myself clear. I want an example of a guy who didn't fit into any of the allowed deductions. And didn't work 80 hours and still got the predetermined amount. I'm not aware of any instance where there is an example of someone who would not fall into the exceptions that are allowed in the regs, as opposed to benefits that the company provides. We'll see if opposing counsel then. I mean, what you're saying is the opposite of what opposing counsel's brief says. I haven't studied all these payroll records. Frankly, if you're making me do that to win the appeal, I'm not sure I'll do it. I'll reserve my time for rebuttal. Mr. Sanford? May it please the court. My name is Josh Sanford. I represent Apple League, Craig Coats, and the other plaintiffs and opt-ins in this case. The plaintiff employees- Give me a guy that fits my example. I don't believe that there's a guaranteed minimum, and we never found an instance where- No, no, I didn't say a guarantee. I want a guy that demonstrates there wasn't a guaranteed minimum. Oh, Ms. Hill? Because he didn't have any allowable deductions, and he didn't work 80 hours, and therefore, he didn't get the predetermined salary. Yes, Ms. Hill, in the supplemental appendix at page 188. Well, one of the named plaintiffs, Mr. Edwin Smith, he had an instance. This is in the supplemental appendix. Ms. Hill's on page 199 of the appendix, and it looks like Mr. Smith is on page 72 of the appendix. Ms. Drennan is on page 188 of the appendix. These are instances where they didn't work 80. They didn't have a benefit to give up or to burn, and they failed to get paid a guaranteed minimum amount, and that's consistent not only with the three times in the 30 v. 6 deposition that Mr. Cart said they only get paid for the hours that they work, but also during the written discovery phase, they had 30 days to answer the question with the help of their by the hour for the hours that they worked. Tellingly, Mr. Coates and the others clocked in at the beginning of the day, and they clocked out at the end of the day, and they got paid straight time for their hours over 40. They simply didn't get an overtime premium, and that's all that this case is about, is that premium. It's not a... If they don't attempt, they don't get the straight time overtime is just fine. Pardon? That's the whole point of an exempt employee. One of the things you can do is voluntarily pay straight time overtime. Yes, if they meet the... Of course, that's what we're talking about. What are you going off on an irrelevant tangent for? I'm sorry. The salary basis test was not met according to the district court because the appellant did not produce a single fact that there was a guaranteed predetermined minimum payment each week. Wait a minute. They've got it on their payroll records, and 98.9% of the paychecks that are produced in the record are consistent with that. Why can't a jury find that they did? The regulation does not provide for an analysis of what generally happens, but instead... What language? That's what Hughes says, which basically jettisoned prior Sixth Circuit precedent, and I find very unpersuasive. That's the language of the regulation turns into this notion of guarantee. Okay. 541.602A, this regulation uses the... Those regs were all quoted in Hughes, and they jumped from that language about no deductions based on quantity and quality of work into it's got to be guaranteed. Yes, I think guaranteed... That is one exception in 23 years means the jury can't find that they were paid on a salary basis. What case other than Hughes says that? Well, we're not relying on Hughes, we're just relying on this... You did rely on Hughes, that's where I got it was from your brief. We did reference Hughes, but we rely on the plain language of the CFR, which says that the amount must be paid not subject to reduction based on the quantity of work. Or quality. Or quality, although that's not an issue in this case. But not subject to deduction doesn't mean that mistakes or accidents don't happen. If the... That seems to me that's a jury question. If the defendant could walk back Mr. Cart's testimony and it's verified discovery responses, it may be the case that they are entitled to a trial. However, the district court was correct in noting not that there was an imbalance of actual evidence to establish whether or not the salary was guaranteed. But the Falcon Jet put forth no evidence and the Falcon Jet filed its own motion for summary judgment. It resisted our motion for summary judgment. Well, they had payroll records describing it as a salary, didn't they? They did have... The court just says, well, you can write anything anywhere and that's not evidence. That's wrong. A payroll record that tells an employee you're paid on a salary basis. No, it is what it is. It may not be true, but it's evidence of what the employer intended. I mean, if you falsify something like that, you get sued all the time. I think that the district court was right in viewing it as a self-serving label. Of course, of course. Of course, employers strive to get these exemptions where they're warranted. And therefore, they put all the self-serving labels they can in their records to demonstrate that what they want is what they're doing. This strikes me as, you know, the district court just, I think, said, oh, well, I mean, self-serving, that's the good description of the district court's back of the hand, the payroll record. The payroll labels don't exist in a vacuum. And Mr. Cart, on behalf of Falcon Jet, explained what they mean. And he said in his deposition that the word salary means 2,080 times the hourly rate. And so the issue for the district court and the issue for this court is, was there a predetermined guaranteed amount? And the answer is no, because the plaintiff class, the appellees, had to work the hours at the rate of pay that is ascribed to them as a salary in order to earn that amount. It's the evidentiary question. Is the evidence so clear that summary judgment was appropriate? And why is it? I mean, not just because the interrogatory answers and Mr. Cart didn't, you know, describe the normal, I don't, his testimony does not refute, nor does the fact that it's an hourly wage, nor does the fact that 80 hours is the norm and we pay some straight line overtime. None of that refutes qualifying for the exemptions. The failure of Falcon Jet to predetermine and pay an amount not subject to reduction for the quantity of the work is the very fact. But not, they don't have to, they don't have to write in the, you know, they don't have to print the reg language of the regs in the payroll records. No, no, not at all. The facts either do or do not bear out that the predetermined rate calculated or described in hourly terms and with the clock punching and so forth, which are facts a jury would take as suggesting it wasn't a true salary. But the proof of the pudding is how are they paid? And Falcon Jet has had five or six or seven opportunities in briefing from the district court up to this level to point to specific facts and say here's an instance as. Okay, and they've got, but you come up with three employees and they've got responses to all of them in their brief. Well, they have theoretical explanations. They're not factual explanations. They say this is how it could have been. Well, what do you mean if they're not factual explain? Pick one on Pickhill or something. Yes, Ms. Hill. For the pay period ending April 17, 2016, she only worked 25.76 hours that week. She was without vacation time or sick leave. She worked 25 hours, what? 25.76 for the week. She didn't have any over, I'm sorry, she didn't have any benefits to make up or burn in order to get up to 40 hours per week and she was not paid the make up, the differential between the 40 and the 25.76. Falcon Jet's argument about that pay period is that there's a set of facts which might exist which would justify putting the issue to a jury. But they don't actually provide the facts. They just give a framework for which that dispute could get to a jury. But they don't actually explain when did she work and why was she not paid the, why was she only paid for the hours that she worked. Are the other two similar? The other two examples that you mentioned, is that the same response? Drennan and Smith, yes, they both don't have a benefit to burn and they both get paid only for the hours that they work. But is the company's response the same? Yes, more theoretical explanations. If Mr. Cart didn't testify the way that he did and if they didn't answer discovery requests the way that they did, it might have been inappropriate for the district court to interpose its judgment in place of a potential jury. But no reasonable jury can look at a set of facts described by Mr. Cart, the underlying payroll records that the court had before it, and then speculate that the company's own deposition testimony about itself is not true and therefore they're entitled to a day before a jury to convince them otherwise. Um, Falcon Jet at least five times admitted that the employees were paid by the hour. The admission came early in the case and the evidence in the record confirmed that. And that's the... What, what circuit case says that's significant? Well, Hughes says it's significant, but I understand your honor doesn't like the reasoning of Hughes. Well, it's a little too cut and dry. Um, the district court didn't look outside this circuit. I mean, if you want, if you want to pay your exempt employees straight overtime, um, then you have to focus on number of hours and punching a clock, don't you? Yes, you would. So the fact that, that someone claimed to be exempt punches a clock and the hours are, that's not dispositive. No, what's dispositive is the lack of a, um, payment of a predetermined amount not subject to reduction for not hitting that hour's threshold. Right. That's all I have. Often. Not always. The FLSA in my experience is filled with factual disputes in almost every case, especially about the exemptions. The salary basis test is a bright line rule, and when there's not a, a threshold minimum that's paid without a, um, without being subject to reduction. Does the statute use the term salary basis? I don't think so. No, only the CFR. And, and what year did the, did the labor department come up with that equation? I'll have to research that, your honor. Probably the 40s. I really don't know. Okay. If there are no other questions, I'll sit down. Thank you. Your honors, I agree with opposing counsel on one point, at least, which is that, um, these cases, especially when you're dealing with the exemptions, are filled with factual disputes. And this one is no different. It's filled with disputes. Even if you want to read Richard Cart's deposition testimony or the interrogatory answers the way that appellees do, and we've addressed all those in the briefs, they can be read both ways. And we've also cited all the instances where Cart said it's a set salary. It does not change based on the number of hours that are worked. This is a case that contains a factual dispute. Hughes, to distinguish it from, you know, in one of many ways, was a case in which the defendants were moving for summary judgment, and the court merely found there's a fact dispute here on the salary basis, even applying the guaranteed requirement. And so this case is, is the same in that respect, in that there was a fact dispute. But the burdens are shifted when you look at Hughes. Here, it's the plaintiff's burden to show that there's no evidence here. And, you know, I believe that, um, we've established that there is. I see my time is up. I'm happy to answer questions if there are any. I see none. Thank you, Mr. Marks. Thank you. Thank you also, Mr. Sanford. We, uh, appreciate, uh, counsel's presence and the argument you provided to the court. We'll take the case from your advisory. The court will be in recess for 10 minutes, and we will return and conclude with the final two arguments.